CASE v. CASE.

1. DIVORCE—EXTREME CRUELTY—REFUSAL TO COHABIT.
   A complete refusal of a defendant to cohabit with her husband during a period of nearly three years constitutes extreme cruelty.

2. SAME—COLLUSION.
   No evidence of collusion warranting the court in denying a decree for divorce is presented by a showing that the husband consulted a lawyer concerning his right to a divorce and his wife thereafter refused for about three years to perform her marital duties, or by the fact that the parties adjusted their property matters by an agreement of the husband to pay her alimony in a lump sum. HOOKER, J., dissenting.

Appeal from Oakland; Smith, J. Submitted June 11, 1909. (Docket No. 55.) Decided September 21, 1909. Motion for rehearing submitted October 8, 1909. Granted November 5, 1909. Reargued January 4, 1910.

(Docket No. 1.)    Opinion vacating the former opinion filed February 3, 1910.

Bill by Jesse C. Case against Clara E. Case for a divorce. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Andrew L. Moore,* for complainant.

*Perry & Lynch,* for defendant.

HOOKER, J.    This bill was filed by the husband against the wife for divorce, and was taken as confessed, and heard under a stipulation; an agreement being also made providing for the payment to her of $2,150 alimony contingent on complainant's obtaining a decree of divorce. The records and files of the court showed that he had been previously divorced at the suit of a former wife. The circuit judge caused the defendant to be subpœnaed, and her testimony was taken. He concluded that some of the charges in the bill were false, and intimates that her refusal to cohabit with him was due to his expressed desire for a divorce. We may add to that the fact that she does not oppose the divorce, and apparently made her testimony as nearly harmless to him as she could. We are far from certain that a money consideration was not the cause of this, and that in this sense at least the proceeding was not collusive.

The learned circuit judge who saw and heard the witnesses was in a better situation to judge of the case than we, and while, if believed, the complainant's testimony might have justified a decree in his favor, we are not so sure that he is so deserving as to make it incumbent upon us to reverse his decree. The law makes divorce dependent upon connubial wrong, not mere incompatibility, and courts can only follow and enforce the law. Owing to the fact that in most divorce cases the relations of the parties have become so strained that there is a mutual interest if not a mutual desire that a divorce be decreed,

there is frequently much difficulty in ascertaining the truth, and, so long as the present rules of law continue, it is in keeping with their spirit to require clear proof of misconduct, and absence of collusion before granting divorces upon the testimony of the complainant on bills taken as confessed.

The decree is affirmed.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.

### ON REHEARING.

HOOKER, J. This cause has been argued before the full bench, upon a rehearing granted on motion of the complainant. The bill filed in the cause contains allegations which, if proved, might justify a decree if the acts were without cause. The circuit judge saw the parties and heard their testimony, and he states unqualifiedly that the defendant is a refined and educated woman, that the complainant's testimony was false in more than one particular, and that the only ground upon which a divorce could be granted was her refusal to cohabit with him, which she admits for two years or more. The testimony fully warrants the judge in believing that both parties desired him to grant this divorce. It is plainly perceptible from the atmosphere of the case, and the apparent disinclination of the defendant to place any impediment in the way. But the decree was not based on collusion in either court. The defendant's testimony, however, warrants the inference that she took interest in his affairs and cohabited with him until about two years ago:

"*The Court:* And he further says that from appearances you took no interest in his business affairs. Is that true?

"*A.* Well, since when? I have not taken much interest in it for two years. Since I commenced to know that we could not live together I have not taken so very much interest in affairs.

"*Q.* How long has it been since you did not take any interest in his affairs?

"*A.* Since he came up to see Mr. Moore about getting a divorce.    About two years ago, pretty nearly.

"*Q.* Now, he states that you did not treat the hired help properly, and that you did not cook for them and treat them properly.    Was that true, the latter part of your married life?

"*A.* Yes, sir, for the last two years.    Before that I treated them properly, but since the last two years I don't claim to have.

"*Q.* Now, he speaks of his brother coming there, and you treated him in such a manner that he had to go away?

"*A.* Yes, that is true.

" *The Court:* What was the trouble with his brother and his people?

"*A.* No particular trouble except that I did not like him, and I knew he was not there for any good.    I thought he came there for a visit, and I did not care particularly about waiting upon him, and thought he had as much time to make his bed as I did.

"*Q.* Did you tell Mr. Case that you did not want him there?

"*A.* No, I did not say much of anything to him.    I told my husband before that I did not care to entertain his brother any more.    I did not make his bed.    *   *   * I suppose there is some truth in it probably.    I don't know exactly what he means by decent.    I tried to be decent to him.    I don't quite understand his meaning. He knew the time the meals were always ready.    I rung the bell, and if he heard it he would come.    I ate my meals alone quite frequently.    I do not like to quarrel at the table, and so I ate alone.    I know that it takes two to quarrel.    *   *   *

" *Q.* One principal charge was that you refused to room with him.    What was there about that, and since what year?

"*A.* I don't know as there was any particular cause for it.    I don't know.    I commenced to so thoroughly dislike the man I could not occupy the same room with him.

" *The Court:* And you refused because of this personal dislike to cohabit with him and to occupy the same room with him for how long, two years?

"*A.* Yes, sir.

"*Q.* And that has been continuously?

"*A.* Continuously, yes.

"*Q.* How long ago was it that a divorce was talked by you parties?

"*A.* Why, two years, is it not? He suggested getting a divorce. We have agreed on a settlement of our property matters. I do not see any other course to take. I knew he was coming to see his attorney and talking with him about a divorce.

"*Q.* It is because of that talk, is it not, that you filed no answer or appeared in this case?

"*A.* Well, I don't think I have any grounds. I did not care to make any defense to it."

It is unnatural for such a state of affairs as complainant claims to have existed without any cause. Yet he professes entire ignorance of any reason for her conduct. It requires some credulity to believe this. Moreover, when we examine the testimony quoted, we find that there was a reason for her dislike and refusal to cohabit. A refusal to cohabit may be ground for divorce on the ground of cruelty, but not when the refusal is based on the expressed desire of a spouse for a divorce, accompanied by visits to a lawyer with that object in view. While the writer of this opinion is profoundly impressed that it would be for the benefit of both parties and the public that incompatibility such as is here shown should itself be a ground for divorce, it is doubtful if the consensus of public opinion would approve. Certainly legislation has not advanced so far, as was said in the original opinion. And courts are expected to enforce the law, not make it. We know that there is great laxity in divorce litigation. It is a matter of current comment by the public and the press. Yet the law only authorizes it on proof of certain connubial wrongs. Evidently the circuit judge was convinced that the greatest wrongdoer was the husband, and I am not convinced that he was not. Under these circumstances, I cannot consistently assent to a reversal of this case. The decree should be affirmed.

STONE, J.   I am unable to concur with Justice HOOKER in this case. In my opinion the complainant has, by his

bill and evidence, made a showing that entitles him to a decree of divorce. The parties were married on May 12, 1903. The complainant had been before twice married. His first wife died upwards of 21 years ago. He was married to his second wife in 1888. In 1899 she obtained a divorce from him on the grounds of extreme cruelty and habitual drunkenness. In his bill of complaint in this case, the complainant states his grounds of divorce to be that the defendant, shortly after she came to his home, manifested a surly, sullen, and ugly disposition; that the second week she was there she came to the table five days in succession and did not speak to the complainant or any one else, and that she would often have spells when she would not speak to any one; that she was not satisfied with the conditions of the home, but continually found fault with the complainant, with the home, and with the surroundings; that in the winter of 1903–4 she threatened to go away and leave the place, and that she often repeated this threat. And again, in the fall of 1904, she threatened to leave and vacate, stating that she had a son and she could go and live with him. And during the years of 1903 and 1904 there were many occasions when she would not speak to the complainant for days, and there were often many occasions when she would not get his meals, nor meals for the men employed about the farm; that about the 1st of August, 1904, defendant left the home of complainant for about four weeks; that in the fall of 1904 complainant went to one of the neighbor's homes on an errand, and when he came back to his home defendant was angry and in a state of excitement, and that she there accused complainant of running after bad women, and said that he was chasing around after that class of people in the neighborhood. Complainant alleges that this accusation was wholly false and unwarranted; and yet, in spite of that fact, it was repeated subsequently by defendant on several occasions; and defendant accused complainant of visiting houses of ill fame in the city and resorting with that class of people. All of which complain-

ant states was wholly false and entirely uncalled for; that in the winter of 1905 defendant often said to complainant that she did not care anything for him, or for any of his people. She had stated repeatedly that she would rather live alone, and stay alone. And when asked why she remained at complainant's house, she stated she would stay simply to annoy him and make him trouble.

The bill further charges that about the month of March, 1906, defendant fitted up in the home of complainant a room, and that from that time on she refused to cohabit with complainant, to sleep with him, or to occupy the same room with him; and that she has continued to so refuse from that time until the time of filing of the bill, and that she repeatedly stated that she would not cohabit with complainant in the future, and that she would not occupy the same room with him, and insisted that she would have nothing to do with him whatever; that on some occasions the defendant refused to get meals for complainant, or for the hired help; that she would leave the home without notifying complainant and not return at meal time; that on some occasions she would sit at the table for a part of the meal time, and on others would refuse to sit at the table at all; that as soon as her meals were over she would go to her room and remain there; that she would refuse to sit with complainant and companion with him, or in any way act toward complainant as a wife should towards her husband; that on several occasions complainant would have to go to neighbors for his meals, and that he has been obliged to get meals at his neighbors for the hired help; that on one occasion she refused to cook for the threshers, when they had threshers at the farm. Complainant was obliged to get the threshers' meals at his neighbor's and pay for them. On many occasions she left the home without leaving any provisions prepared, and would go away for days without giving any warning to complainant that she was going away, and without leav-

159 MICH.—32.

ing anything for complainant or hired help to eat while she was gone. The bill of complaint was taken as confessed after personal service of a subpœna and appearance by her solicitor. The testimony of the complainant fully sustains the allegations of the bill, and is corroborated in many instances by several witnesses. It is only fair to say, however, that he is not corroborated as to his claim that the defendant accused him of consorting with lewd women.

By order of the court the defendant was examined as a witness in the case. Her testimony fully sustains the charge of complainant that she had refused to cohabit with him for upwards of two years. Justice HOOKER has quoted some of her testimony. She further testified as follows:

"*Q.* Do you know of your husband going over to the neighbors and getting meals on various occasions?

"*A.* I can't tell you. I was not there. I don't know whether he did or not.

"*Q.* He said the reason he went was because you did not get his meals at home. Is that true?

"*A.* I presume it is, very likely, if he did not eat at home he would go away.

"*The Court:* The principal charge was this: Excuse me, I am able to state it without reading the testimony. One principal charge was that you refused to room with him. What was there about that, and since what year?

"*A.* I don't know as there was any particular cause for it. I don't know. I commenced to so thoroughly dislike the man I could not occupy the same room with him.

"*The Court:* Was it because of any physical condition on his part?

"*A.* Oh, no.

"*The Court:* The lack of cleanliness?

"*A.* He was not particularly clean by any means.

"*Q.* What was the real reason? The principal reason?

"*A.* Well, I don't know. There were so many little reasons. I suppose I could have endured him if I had liked him at all.

"*Q.* It was largely because of your personal dislike? You did not like the man?

"*A.* I don't know.

"*Q.* Was it because of anything he had done himself personally, associating with other people? Anything of that sort?

"*A.* Oh, no.

"*Q.* With other women, for instance?

"*A.* Oh, no. We never had any trouble about that matter.

"*Q.* Was there any trouble between you and him because of the use of intoxicating liquor?

"*A.* No, he did not use intoxicating liquor.

"*The Court:* Did he when you married him?

"*A.* No.

"*The Court:* He quit before that?

"*A.* Yes.

"*The Court:* And you refused because of this personal dislike to cohabit with him and to occupy the same room with him for how long, two years?

"*A.* Yes, sir.

"*Q.* And that has been continuously?

"*A.* Continuously, yes.

"*Q.* I would like to ask you this question as to whether or not you think it is possible for you and Mr. Case to live together as husband and wife now or in the future?

"*A.* I do not.

"*Q.* Would you live with him?

"*A.* No, I don't think I would. I could not the way I feel now about it.

"*Q.* You have got very decided views on that subject, I take it?

"*A.* Yes, sir.

"*Mr. Lynch:* You never made a charge, as I understand it, about your husband being intimate with other women around there?

"*A.* No, I never entertained any suspicion of anything of that kind.

"*Mr. Moore:* During the time you have ceased to cohabit with Mr. Case has there been any period when you did occupy the same room with him?

"*A.* No, there was not.

"*Q.* After the room which you spoke of—your room— was fitted up by yourself, that was occupied to the exclusion of Mr. Case?

"*A.* Yes, sir.

"*Q.* During that period covering something like two years do you know of any time when he was ever in your room, either day or night?

"*A.* No, sir. I recall the occasion when the threshers were there. They were fed at the neighbors.

"*The Court:* How long ago was it that a divorce was talked by you parties ?

"*A.* Why two years, is it not ? He suggested getting a divorce. We have agreed on a settlement of our property matters. I do not see any other course to take? I knew he was coming to see his attorney and talking with him about a divorce.

"*Q.* It is because of that talk, is it not, that you filed no answer or appeared in this case ?

"*A.* Well, I don't think I have any grounds. I did not care to make any defense to it.

"*Mr. Lynch:* And did I not state to you at the time you employed me that you had no grounds for divorce against Mr. Case, when we talked over the case.

"*A.* Yes, sir. And then we talked over an adjustment of the alimony matter."

There can be no doubt that the evidence in this case fully sustains the charge that the defendant has utterly refused to cohabit with the complainant for upwards of two years, that she has so refused persistently and continually. She gives no reason for this except that she came to utterly dislike the man, and that she could not endure him. It is true she states that some two or three years ago the complainant consulted a lawyer with reference to a divorce. This seems to have come to her knowledge, and she made it the occasion for refusing to cohabit with him. I do not think that it can be said that he had not the right to consult with a lawyer, if he claimed his wife was not performing her marital duty. Nor do I believe that that can be urged as a ground of justification for her subsequent conduct. It is true this man's second wife had obtained a divorce from him. This the defendant does not complain of. She does not claim that she was deceived in the matter in any way, but states frankly that while the complainant had not told her of this divorce, yet he supposed his sister had told her, and she made no complaint of it. There was no claim of collusion in the court below, nor is there any in this court. Neither

is there any evidence to warrant such a claim. The fact that the wife gives a cause for divorce by refusing to cohabit with her husband is no evidence of collusion. The question of the refusal to cohabit as a ground for divorce is not a new proposition in this State. This court has, in numerous cases, sustained the doctrine upon the ground of·extreme cruelty. *Menzer* v. *Menzer*, 83 Mich. 319 (47 N. W. 219, 21 Am. St. Rep. 605); *Whitaker* v. *Whitaker*, 111 Mich. 202 (69 N. W. 1151); *Campbell* v. *Campbell*, 149 Mich. 147 (112 N. W. 481, 119 Am. St. Rep. 660); *Donaldson* v. *Donaldson*, 134 Mich. 291 (96 N. W. 448).

It is not necessary to discuss the question as to whether such conduct would amount to wilful desertion. It seems to me that where there has been a complete refusal on the part of the defendant to cohabit with the complainant for a period of nearly three years—a continuous and positive refusal—the only basis of the refusal being that she did not like the complainant, this conduct constitutes extreme cruelty within the meaning of our statute, and warrants a divorce from the defendant in such a case.

It will be observed from her testimony that the wife makes no charge of drunkenness or consorting with lewd women on the part of the complainant. She distinctly testifies that during her married life he had not drank at all. So far as this record shows, the complainant had fully reformed from the drink habit.

It is true that the circuit judge saw and heard the witnesses and the parties, but it seems to me that he is not warranted in some of the conclusions which he drew in the case, and that these conclusions are not supported by the testimony. The mere fact that this man's second wife had obtained a divorce from him should not be any reason why he might not have a standing in a court of equity in such a case as this, especially where there is no claim that he has been guilty of the same offense towards the present spouse.

In view of the opinion of Justice HOOKER, it has

seemed to me necessary to set forth somewhat fully the claim of the complainant in his bill of complaint, and the somewhat extended testimony of the defendant. In my judgment the decree below should be reversed, and one entered in this court granting a divorce to the complainant.

MONTGOMERY, C. J., and OSTRANDER, MOORE, McALVAY, BROOKE, and BLAIR, JJ., concurred with STONE, J.