### WILLIAMS v. WILLIAMS.

Divorce—Extreme Cruelty—Evidence—Reconciliation.
  Plaintiff husband failed to justify an award to him of a decree of divorce on the ground of extreme and repeated cruelty on part of wife by a showing of bickering, shortness of temper, vexatious conduct, and cessation, but no denial, of marital rights, even though there be little likelihood of a reconciliation.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 7, 1958. (Docket No. 9, Calendar No. 47,144.) Decided March 4, 1958.

Bill by Kenneth W. Williams against Marguerite Williams for divorce. Decree for plaintiff. Defendant appeals. Reversed and bill dismissed.

*Brakie J. Orr,* for plaintiff.

*Dell & Heber,* for defendant.

Smith, J. Our question in this case is whether or not the testimony adduced on the hearing justified

References for Points in Headnotes
17 Am Jur, Divorce and Separation § 46 *et seq.*

a decree of divorce to the plaintiff on the. ground of his wife's extreme and repeated cruelties. The trial chancellor held that it did. The wife has appealed to this Court. She denies the cruelties.

The husband relies, for divorce, upon his wife's asserted argumentative disposition and violent temper, her coolness and indifference towards him, and the fact that she took trips without him. These defaults, we are told, affected his appetite, caused him mental anguish and reacted adversely upon his work.

The parties were married in Detroit in 1932. There have been no children born of the marriage. There is no doubt that during the 20-odd years of marriage there have been arguments and, at times, *sequelae* of violence. Sometime or other (the date is not in the appendix, appellant's brief describing it as "sometime in 1943 or 1945," appellee contenting himself by stating that it was "on one occasion") she upset the kitchen table, and its contents, in his lap. We are not told why. On another occasion in 1952 she got so mad (he says; he wasn't there but heard the noise from the living room) that she rammed her fist through the glass in a storm door and cut herself (not him) severely. Our attention, also, is directed to a series of trips taken by defendant wife. On one of them, the longest one, a trip to Florida, he joined her when he took his vacation. Once she went to see her mother, who was sick in St. Louis. Another time she had gone to Florida intending to stay 2 or 3 weeks, but cut her visit short and returned to Detroit after she heard he was ill. He did not, he testified, deny her permission to make any of these trips. ("That would have been useless.") She just took them. She has worked in commercial employment for some 12 to 15 years of their married life, for the past 8 or 9 years for one concern in the Detroit area. Plaintiff testified as to only one trip on his own part. This was of approximately 5 or 6 weeks' duration

(date not given), following some family discussion concerning his visits to a widow lady which (and whom) his wife apparently resented. As to defendant's alleged coolness and indifference towards him, plaintiff testified that he and defendant had not had marital relationships since 1951 or 1952. But it was in 1952, appellant points out, that plaintiff began planning for his divorce and commenced his diary of the various bad things his wife did. The cessation of marital relationship with the inception of the diary may be more than a coincidence, as appellant strongly hints, but we need not vex the problem for, while persistent denial of conjugal rights may constitute cruelty, *Case* v. *Case,* 159 Mich 491, plaintiff has never, at any time, as he admits, suffered denial.

All of the above places us in the position of the devil when he tried to shear a hog. We have gotten lots of noise but very little wool. The trial chancellor concluded that the case was "not a very strong one," and "not particularly impressive," but awarded the divorce on the ground that there would never be a reconciliation between the parties.

What we have here is bickering, shortness of temper, and vexatious conduct. Aggravation there has been, but not cruelty. The bonds of matrimony are not to be thus lightly cast aside. There is at stake, for our society as a whole, too much of the public welfare, too much of the public morals, in the preservation of family ties, to permit the spouses to come and go as tempers wax and wane. This is not to say that a people, through their legislature, may not decide, if they wish, to accomplish severance of the marital ties by thrice repeating (as in Hanafi law), "I divorce thee."* But in this State we have not

---

* Fyzee, Outlines of Muhammadan Law, ch 4, Oxford University Press (1955).

done so. Cruelty we have, indeed, made a ground for divorce since the year 1844 (PA 1844, No 60, § 2, p 74), but the cruelty we demand is more than display of temper, more than exasperating habits of conduct or expression. We must get into the realm of the evil and the wicked, of brutality, of malignancy, of indignities endangering mental or physical health. None of this do we here find. The case before us finds some parallel in *Lewis* v. *Lewis*, 221 Mich 73, 75. 76, wherein we held:

"The chancellor who heard the case was of the opinion the case was a weak one, but it would be for the best interests of all concerned if they were divorced. We quite agree with the chancellor that it would be for the best interests of the parties and the public if these parties were legally separated, and, if these were considerations upon which a divorce could be granted, we should be inclined to acquiesce in the decree. But, fortunately or unfortunately, these are not statutory grounds for divorce. The showing made by her is too weak to permit of a decree."

It is probably as true in this case as it was in *Bolthuis* v. *Bolthuis,* 233 Mich 584, 587, that there is little likelihood of reconciliation. But as we there said, the fact "that the parties may not live together again gives no right or reason, grounded in public policy, to find defendant guilty as charged" of extreme cruelty.

The decree is reversed and plaintiff's bill of complaint dismissed. Costs to appellant.

DETHMERS, C. J., and BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with SMITH, J.

CARR and KELLY, JJ., concurred in the result.